ED. M. MOREY, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed July 6, 1916.

1. Pleas in abatement are required to possess the highest degree of certainty in their averments and all intendments are taken against the pleader.

2. A plea in abatement to an indictment upon the ground that the Clerk of the Circuit Court failed to correctly record the list of persons selected by the County Commissioners to serve as jurors, is defective in that it does not exclude the idea that the names of the persons composing the jury which found the indictment were drawn from the jury box prepared as directed by Section 1574 of the General Statutes.

3. The failure of the Clerk of the court to correctly record the list of persons selected by the County Commissioners to serve as jurors cannot be harmful to one indicted by a grand jury

composed of persons whose names appeared upon such list, but whose names were properly placed in the jury box and drawn therefrom in accordance with the requirements of the statute to serve as jurors.

4. Objections to evidence upon the ground that it is irrelevant and immaterial, are so general in character as to be vague and nugatory and without weight before an appellate court, unless it appears that the evidence objected to is palpably prejudicial, improper and inadmissible for any purpose.

5. Where a witness in reply to a question makes a statement which is objectionable as violating the rules of evidence, the proper course is to move that the statement be stricken and the jury directed not to consider it, specifying particularly the ground of objection.

6. In the trial of an indictment for murder where the defense is self defense, evidence on the part of the State that the deceased suffered from a physical infirmity impairing his strength and vigor is admissible where it is shown that the defendant knew of such infirmities.

7. Where a question propounded to a witness does not itself indicate the relevancy of the answer, in order to have the court's ruling upon such question reviewed on appeal, the person seeking to introduce the evidence should make a proffer of what he proposes to prove so that the trial and appellate court may determine whether the proposed evidence is material. If the party complaining fails to do that he fails to make the alleged error to appear.

8. Where the State in a criminal prosecution offers evidence of inculpatory statements made by the defendant, the latter has a right to have placed before the jury the entire conversation or all the statements made by the defendant at the same time relating to the same subject-matter, whether such other statements or the remainder of such conversation is exculpatory in character or not.

9. Testimony of a witness which is immaterial to the issue, but

prejudicial in character to the defendant, should be stricken out upon motion.

10. Upon the trial of an indictment for murder, instructions given by the Coroner to the jury of inquest concerning the importance of certain facts as evidence are not admissible.

11. Upon the trial of an indictment charging the defendant with the commission of a capital offense, it is important that the defendant should be present at every stage of the trial, including the argument of counsel.

Writ of Error to Circuit Court, Hernando County; W. S. Bullock, Judge.

Judgment reversed.

*Davant & Davant,* for Plaintiff in Error;

*T. F. West, Attorney General,* and *C. O. Andrews, Assistant,* for the State.

ELLIS, J.—The plaintiff in error, hereafter referred to as the defendant, was indicted by the grand jury of Hernando county for the murder of Robert Whitfield in May, 1915, and was brought to trial in the Circuit Court of that county in November, following, when he was convicted of manslaughter and sentenced to imprisonment in the State prison at hard labor for a period of ten years. To that judgment the defendant took a writ of error.

The defendant interposed two pleas in abatement to the indictment which in substance aver: First, that the County Commissioners in January, 1915, prepared a list of three hundred and eight persons to serve as jurors during the year 1915, that the list contained the names of W. E. Dees, J. M. Smith and Joe McKinney, but in the record of the list those names were omitted. That in such

record the name of J. M. Dees appears but no such name is among the names on the list as prepared by the County Commissioners. That the Grand Jury which found the indictment was composed of men whose names were drawn from the list and Joe McKinney whose name appeared on the list, but did not appear in the record of the list was one of the Grand Jurors who returned the indictment.

Second. On information and belief it is averred that the Circuit Judge did not at the Spring term of the court draw a list of persons to serve as jurors at the Fall term of the court, from the jury box, but the Clerk attempted to do so, and there was not posted at three public places in the county ten days previous a notice of the time and place of drawing the jury as required by law. The pleas were verified by the oath of the defendant. The State Attorney demurred and the court sustained the demurrer by an order in the following language: "The above motion was argued and upon consideration thereof it is ordered that the said motion be denied." This ruling of the court constitutes the basis of the first assignment of error.

It appears from the averments of the first plea, that the defendant's objection to the indictment rests upon the failure of the Clerk to correctly record the list of persons qualified to serve as jurors as selected and prepared by the County Commissioners. From anything appearing to the contrary in that plea the names of the persons who served as grand jurors at the Fall term were drawn from the jury box in conformity with the statutory requirements.

Pleas in abatement are required to possess the highest degree of certainty in their averments and of course all intendments are taken against the pleader. Cannon v. State, 62 Fla. 20, 57 South. Rep. 240; Young v. State, 63 Fla.

55, 58 South. Rep. 188; Keech v. State, 15 Fla. 591. Section 1574 General Statutes of 1906, same section Florida Compiled Laws of 1914, requires the Clerk of the Circuit Court in the presence of the Sheriff upon receiving the list of jurors to write the names of the persons contained therein on separate pieces of paper, and fold or roll such pieces of paper so that the names written thereon shall not be visible, and deposit them in the jury box, from this box the names of persons to serve on the grand or petit juries are drawn. If these names were correctly taken from the list and written upon separate pieces of paper and the same folded and deposited in the box as the law required, the defendant could not have been injured in the enjoyment of his rights if the Clerk did thereafter incorrectly record the list in the minutes of the County Commissioners, nor could the defendant have suffered any wrong if the list had been previously incorrectly recorded. In the case of Keech v. State, *supra,* the court said: "If the Clerk neglects to perform such duty as directed by the statute, the court may require and compel him to do it at any time and thus the omission is cured. The accused cannot be prejudiced by it." See Cochran v. State, 65 Fla. 91, 61 South. Rep. 187.

The second plea is also bad because it does not aver that the names of the persons constituting the grand jury which returned the indictment were drawn from the jury box by the Clerk of the Court in the manner stated in the plea and without the notice required by law, but it avers merely an attempt on the clerk's part to "Draw from the box the jury" for that term of the court. The attempt of the clerk may have resulted in no selection of the jury by that method, so far as anything in the plea contained shows to the contrary. It is not clearly alleged that the indictment was found by a grand jury whose names were

drawn illegally from the jury box, nor that their names were drawn from any box. The plea does not exclude the presumption that the indictment was presented by a legally constituted grand jury. Woodward v. State, 33 Fla. 508, 15 South. Rep. 252. And it is the settled rule in this State that pleas in abatement to indictments, urging defects in the drawing, selecting and empanelling of grand juries are required to be drawn with a very high degree of certainty to every intent and will be construed with rigid strictness against the pleader. Kelly v. State 44 Fla. 441, 33 South. Rep. 235; Easterlin v. State, 43 Fla. 565, 31 South. Rep. 350; Tervin v. State, 37 Fla. 396, 20 South. Rep. 551. Counsel for the defendant urges that the drawing of the names of persons to be jurors from the box by the clerk without giving the required notice is a fatal irregularity, but the answer to his argument is the plea does not make such averment with the certainty and clearness required. The first assignment of error, therefore, must fail.

During the trial a witness for the State, a son of the deceased, was permitted over the defendant's objection to testify to certain physical infirmities of the deceased from which he suffered about a year before he was killed. The witness spoke at some length about an ailment of some kind from which his father suffered in his right leg, also of an arm drawn and weakened from an accident which happened years before. There was no effort whatever to show that the defendant knew of these infirmities, nor did the testimony subsequently admitted show that the defendant knew of them. The purpose of this testimony was to show that there was not in fact such disparity between the deceased and the defendant in physical strength and vigor as to induce the defendant to believe that he was in greater peril in consequence of the

apparently superior strength and physical ability of the deceased. After the witness had testified that he had not seen his father within a year prior to his death, the State Attorney directed the witness to tell the jury of any physical infirmity that the deceased had of which the witness had knowledge when he last saw the deceased. The record shows an objection by the defendant as follows: "To which question the defendant then and there duly objected for the reason that the same was immaterial and irrelevant." This objection was overruled. The court could not anticipate the statement of the witness. A physical infirmity permanent in character from which the deceased suffered a year before and which was of such nature as to impair his health and strength at the time he was killed, cannot be said to be a circumstance wholly irrelevant and immaterial in a case of this character where the defense was self defense. The statement of the witness may have been subject to a motion to strike it upon the ground that it had not been shown that the defendant knew of the infirmities from which the deceased suffered, State v. Cross, 68 Iowa 180, 26 N. W. Rep. 62, because the defendant could not estimate the degree of danger with reference to the physical infirmities of the deceased as to which the defendant had no knowledge. Where the witness was directed by the State Attorney, however, to tell about the physical infirmities from which the deceased suffered the court could not have held that the narrative would produce improper evidence, palpably prejudicial and inadmissible for any purpose or under any circumstances, nor indeed was the narrative of the witness inadmissible for any purpose. It was admissible as tending to show the relative physical strength of the deceased and defendant as bearing upon the latter's apprehension of danger and as to who was the aggressor. 6 Ency. of

Evidence 767; Wilkins v. State, 98 Ala. 1, 13 South Rep. 312.    This court has many times held that objections to evidence which are so general in character, are vague and nugatory and are without weight before an appellate court, unless the evidence objected to is palpably preju-dicial, improper and inadmisible for any purpose or under any circumstances.    See Putnal .v. State, 56 Fla. 86, 47 South. Rep. 864; McKinnon v. Johnson, 57 Fla. 120, 48 South. Rep. 910; Kirby v. State, 44 Fla. 81, 32 South. Rep. 836; Williams v. State, 53 Fla. 89, 43 South. Rep. 428; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Sims v. State, 54 Fla. 100, 44 South. Rep. 737; Car-ter v. Bennett, 4 Fla. 283, text 338.    The request made by the State Attorney to the witness to tell of the infirmi-ties from which the deceased suffered was not in itself improper, and if the response of the witness contained any statement which was illegal and objectionable on any ground the proper practice required the defendant's coun-sel to move to strike it out and have the jury directed not to consider it, specifying the particular objection thereto. Ortiz v. State, 30 Fla. 256, 11 South. Rep. 611; Rentz v. Live Oak Bank, 61 Fla. 403, 55 South. Rep. 856; Thomp-son v. State, 55 Fla. 189, 46 South. Rep. 842.    There was no error therefore in this ruling of the court.

Assignments of error numbered from three to twenty-one inclusive are based upon the rulings of the court in re-ceiving and rejecting evidence.    Many of the assignments are abandoned and some of them rest upon invalid objec-tions of the same character as those discussed under the second assignment.    We will not consider these assign-ments of error in the order in which they were made and argued by counsel, but will discuss such of them as we think are well taken.

A witness, Frank Cotton by name, was called by the

prosecution. He testified that he was foreman of the coroner's jury which sat upon the body of the deceased. The witness described the place where the body was found by the jury, the position in which the body was lying, the condition of the clothing with reference to bullet holes, the wounds upon the body of the deceased and told about finding in the pockets of the deceased a razor, pocket knife and house key and other articles, and concluded by saying, "The defendant stated that he fired the shot." Upon cross-examination the defendant's counsel asked the witness the following question: "Did the defendant make any other statement?" This question was objected to by the State Attorney "as eliciting a self serving declaration." The objection was sustained and the defendant excepted. The question was simply preliminary. It was not improper. Its purpose was to elicit the fact, which seemed to be conceded by the prosecution, that the defendant had made to the coroner's jury or to the witness other statements at the same time that he made the one about firing the shot and such other statements were beneficial to himself or exculpatory. In the case of Boykin v. State, 40 Fla. 484, 24 South Rep. 141, the court said, speaking through Mr. Chief-Justice TAYLOR, that the party appealing to an appellate court should make the error of which he complains apparent. That where a question does not itself indicate whether the answer to it will be material or pertinent evidence, "the party seeking to introduce the evidence must in order to have the ruling reviewed on appeal, make an offer of what he proposes to prove so that the trial and appellate court can determine whether the proposed evidence is material or not, otherwise he fails to make his alleged error to appear." In this instance, however, the State Attorney apprised the court of the character of evidence sought to be

introduced, and on this information the witness was not permitted to answer the question.    We think, therefore, the question is sufficiently presented, whether the State having offered evidence of inculpatory statements made by the defendant, may the defendant on cross-examination show other exculpatory statements or statements deemed exculpatory made in the same conversation or at the same time in reference to the same subject matter? This court has decided the identical question in the affirmative.    Thalheim v. State, 38 Fla. 169, text 199, 20 South. Rep. 938; Williams v. Keyser, 11 Fla. 234; Meacham v. State, 45 Fla. 71, 33 South. Rep. 983.    It does not appear whether the statement made by the defendant that he fired the shot was made to the witness in a conversation with him, or whether it was made before the jury; but the point is immaterial, the statement was offered by the State as an admission and as the court said in the Thalheim case "The defendant is entitled to have before the jury all that was said upon the subject upon the particular occasion whether prejudicial or beneficial to him.    The State having opened the door by proving a part of the conversation, it cannot close it upon the defendant so that he cannot offer the other part of the conversation which relates to the same subject matter. The whole conversation should be before the jury and they should determine what weight and effect should be given to the whole conversation."    See also Vinson v. State, 10 Ala. App. 61, 64 South. Rep. 639.    The court erred in sustaining the State Attorney's objection to the question.

M. S. Slaughter, a witness for the State, testified that he was the coroner who conducted the inquest held upon the body of the deceased.    Upon a request from the State Attorney to tell the jury how the witness found the body

and where the wounds were, and anything else he might know about the matter, the witness replied as follows: "After I empaneled the jury, from the evidence that I had heard—of the reports that I had heard when I was sent for.  I particularly asked the jury to look for the knife. I wanted that got that he said he had in his hand."  The defendant's counsel moved to strike this testimony upon the ground that it was irrelevant and immaterial.  The motion was overruled and the defendant duly excepted. This transaction constituted the basis of the seventh assignment of error.

The point was well taken and should have been sustained.  The coroner's jury was empanelled the morning following the death of the deceased.  H. E. Revels, the sheriff, and A. H. Touchstone, a witness for the State, both arrived upon the scene of the homicide within a half hour after it occurred, they each said that they found no knife on the ground.  W. C. Douglas, a witness for the State, who arrived at the scene a few minutes after the homicide also said he looked for a knife and found none, but the next morning about daylight he found a knife lying upon the ground a few feet from the body, and gave the knife to Mr. Cassman who kept it.  The defense was that the deceased was advancing upon the defendant with an open knife endeavoring to cut him when the defendant fired the fatal shots.  The coroner's instructions to the jury, which was empanelled about ten o'clock Monday morning, to look for a knife was immaterial and irrelevant testimony.  Yet it could not be said to have been without prejudice to the defendant.  The importance which the coroner attached to the circumstance and his desire to obtain that evidence, could have had no other effect than to impress the jury with the coroner's view of its value as a circumstance in defendant's

favor, and the damaging significance of the jury's failure to find it. The evidence was improperly received. See Parham v. State, 147 Ala. 57, 42 South. Rep. 1; Hall v. State, 137 Ala. 44, 34 South. Rep. 680. Mr. Wigmore in his work on Evidence discussing the admissibility of testimony taken at a coroner's inquest upon the trial of the defendant, says: In the United States the "proper conclusion has been reached that the lack of cross-examination as an element in coroner's procedure makes such testimony inadmissible." But the coroner's desire to find the knife and his instructions to the jury to look for it, was a circumstance which was not of the same character as the testimony of witnesses sworn to speak the truth. See State v. Row, 81 Iowa, 138, 46 N. W. Rep. 872; Sylvester v. State, 71 Ala. 17; Whitehurst v. Commonwealth, 79 Va. 556.

The other assignments of error which are argued and based upon objections to the reception and rejection of evidence we have examined, but find no error in the ruling of the court.

During the argument of the State Attorney before the jury the defendant without the knowledge or consent of the court left the court room and went across the hall into another room. The State Attorney who was seemingly not aware of the defendant's absence proceeded with his argument. This circumstance was made the sixth ground of the motion for a new trial, which motion was overruled. In view of the conclusion at which we have arrived upon the assignments of error above discussed, and the unlikelihood of this proceeding being repeated upon another trial of. the cause, we will not decide the point presented. We deem it advisable however to say that such an irregularity should under no circumstances be permitted. The legality of a conviction under such

circumstances is very doubtful. During the whole of the trial of a capital case the defendant is required to be present and it is exceedingly doubtful if he·may by his voluntary act dispense with the necessity of being present during all of the argument of counsel. Holton v. State, 2 Fla. 476; Gladden v. State, 12 Fla. 562; Irvin v. State, 19 Fla. 872; Adams v. State, 28 Fla. 511, 10 South. Rep. 106; Lovell v. State, 29 Fla. 356, 11 South. Rep. 172; Summeralls v. State, 37 Fla. 162, 20 South. Rep. 242; Menefee v. State, 59 Fla. 316, 51 South. Rep. 555; Blocker v. State, 60 Fla. 4, 53 South. Rep. 715. The case of Williams v. State, 42 Fla. 210, 27 South. Rep. 869, holds merely that the record need not show affirmatively that the defendant was personally present at the hearing of and ruling upon his motion for a new trial. The views here expressed are not inconsistent with the holding in Haynes v. State, decided at the January term, 1916, of this court.

We have discovered no errors in the record further than have been pointed out above, for which errors the judgment is reversed.

TAYLOR, C. J. and SHACKLEFORD, COCKRELL and WHITFIELD, JJ. concur.